HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS E. PEREZ, in his capacity as
Secretary of the United States Department of
Labor,

          Plaintiff,

   v.

LUKAS MACHINE, INC., et al.,

          Defendants.

CASE NO. C14-555RAJ

TEMPORARY RESTRAINING
ORDER

Expires: April 29, 2014 at 11:59 p.m.

## I.  INTRODUCTION

This matter comes before the court on initial consideration of Plaintiff's motion for a temporary restraining order ("TRO").  Dkt. # 3.  For the reasons stated below, the court GRANTS the motion in part and imposes a limited TRO to preserve the status quo while it awaits a response from Defendants to Plaintiff's motion.  The TRO contained within this order will expire at 11:59 p.m. on April 29, 2014, unless the court orders otherwise.  This order concludes with instructions to Plaintiff to accomplish service of the summons and complaint, the motion for TRO, and this order, instructions to Defendants Brenda Lukas-Jones and Massachusetts Mutual Life Insurance Company ("MassMutual") and any other Defendants who wish to oppose this motion, and instructions to Plaintiff in the event that he wishes to obtain a preliminary injunction or extend the duration of the TRO.

ORDER – 1

## II.  BACKGROUND

Ms. Lukas-Jones was at all relevant times the President of Defendant Lukas Machine, Inc. and a fiduciary of the Lukas Machine, Inc., 401(k) Profit Sharing Plan and Trust (the "Plan").  She was also a participant in the Plan.  According to the Plaintiff, the Secretary of the United States Department of Labor, Ms. Lukas-Jones withheld both employee contributions owing to the Plan and money allocated to repay loans that Lucas Machine employees had taken against their Plan balances.  The Secretary has submitted evidence that the total withheld contributions and repayments, plus interest, amount to just over $46,000.  The evidence establishes that the Secretary has made some effort over the last year to require Ms. Lukas-Jones to repay the contributions she withheld.

On April 11, 2014, a representative of MassMutual, the Plan's custodian, notified the Secretary that Ms. Lucas-Jackson had requested a rollover of her own vested balance in the Plan into an individual retirement account.  That prompted the Secretary to file this lawsuit today.  It alleges that Ms. Lucas-Jackson and Lukas Machine committed various violations of the Employment Retirement Income Security Act of 1974 ("ERISA").  To ensure that the court can afford complete relief, the Secretary also named MassMutual and the Plan as Defendants, although there is no indication that MassMutual or the Plan oppose the Secretary in this matter.  Among other remedies, the Secretary requests that the court order that any monetary judgment it issues in this action be offset against Ms. Lucas-Jackson's Plan balance in accordance with 29 U.S.C. § 1056(d)(4).  Section 1056(d)(4) is an exception to ERISA's general prohibition on assignment or alienation of plan benefits.  It permits a court to order an "offset of a participant's benefits provided under an employee pension benefit plan against an amount that the participant is ordered or required to pay to the plan" if a variety of conditions are met.  § 1056(d)(4).  Among those conditions is a "civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of this subtitle . . . ."  § 1056(d)(4)(A)(ii).  Part 4 of the referenced subtitle comprises

ORDER – 2

sections 1101-14 of Title 29 of the United States Code.  Those sections govern the duties of ERISA plan fiduciaries and create civil liability for breaches of those duties.

Along with his complaint, the Secretary filed a motion for a temporary restraining order and preliminary injunction preventing any Defendant from withdrawing or assisting the withdrawal of Ms. Lucas-Jackson's Plan balance.

### III.  ANALYSIS

The "standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction." *Beaty v. Brewer*, No. 11-9907, 2011 U.S. App. LEXIS 11391, at *8 (9th Cir. May 25, 2011).  The primary difference is that a court can issue a TRO without notice to the adverse party in certain circumstances. Fed. R. Civ. P. 65(b)(1)(A).  Putting aside concerns about notice to the non-moving party, the court may issue a TRO where a party establishes (1) a likelihood of success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  In cases where clear irreparable harm would result and there are serious questions going to the merits, a court may issue provisional relief for the purpose of permitting it to consider the merits of the dispute on a reasonable timetable.  *Id.* at 1134.  *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) (noting that it appears settled that *Winter* did not "change the requisite showing for any individual factor [in the Ninth Circuit's preliminary injunction analysis] other than irreparable harm").

The court has no idea if any Defendant has received notice of the Secretary's motion.  There is no proof that the Secretary has attempted service of the summons and

ORDER – 3

complaint and no proof that the Secretary has attempted to give any Defendant even informal notice of the complaint or his motion for injunctive relief.  The Secretary has not, moreover, addressed the requirements of Rule 65(b)(1)(A), which govern the issuance of a TRO without notice.

The court concludes that the Secretary is likely to succeed on the merits of his claims against Ms. Lucas-Jackson for violations of ERISA.  The Secretary has submitted the declaration of an Employee Benefits Security Administration investigator.  That declaration provides evidentiary support for the facts essential to the Secretary's case on the merits.  Of course, the court reaches the conclusion after reviewing only the Secretary's evidence.  It has not considered Ms. Lucas-Jackson's version of the facts. The court may reach a different conclusion after hearing from her.

The question for now is whether the remaining factors relevant to injunctive relief justify imposing a temporary restraining order while the court awaits Ms. Lucas-Jackson's response to the Secretary's motion.  First, the court considers the Secretary's failure to give notice to Ms. Lucas-Jackson and his failure in the motion before the court to address his obligation to give notice.  That is questionable litigation practice, to say the least.  Nonetheless, Rule 65(b)(1)(A) permits the court to issue a TRO without notice on the basis of specific facts that suggest irreparable injury will result if it does not issue relief before the opposing party receives notice.  In this case, those facts come in the form of the Secretary's evidence that MassMutual is compelled by law to process Ms. Lucas-Jackson's rollover request absent an order from the court.  There is no evidence as to how quickly MassMutual must process that request, but the court is reluctant to require the Plan's custodian to make the Hobson's choice of whether to honor a facially lawful request for rollover from one of its participants or to preserve the integrity of the Plan by denying that request until this dispute reaches a resolution.  Accordingly, the court

ORDER – 4

1    concludes that the Secretary's failure to address its obligation to give notice is not

2    necessarily fatal to its motion.

3            The court rejects the Secretary's argument that it need not prove irreparable harm.

4    *Winter* and its progeny have explicitly undone much precedent that formerly permitted

5    parties to avoid their obligation to prove irreparable harm by proving a violation of a

6    federal statute.  *See*, *e.g.*, *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d

7    1239, 1249 (9th Cir. 2013) (overruling, in light of *Winter*, precedent that presumed

8    irreparable harm arising from trademark infringement in violation of the Lanham Act).

9    Nothing in § 1056(d)(4) or any other section of ERISA suggests that Congress intended

10   an offset of a fiduciary's plan balance to flow automatically from a breach of fiduciary

11   duty.  Instead, § 1056(d)(4) permits, but does not require, the court to order an offset

12   remedy.  It does so, moreover, only after the court has issued a final judgment or other

13   final order.  The Secretary alleges that in enacting § 1056(d), "Congress specifically

14   authorized the injunctive relief [he] seeks here."  Yet § 1056(d) is silent as to injunctive

15   relief, and the two cases that the Secretary cites for the proposition the court has just

16   quoted do not remotely support that proposition.  *See* Pltf.'s Mot. at 3 (citing *Solis v.*

17   *Seibert*, No. 8:09-cv-1726-T-33AEP, 2011 U.S. Dist. LEXIS 11249 (M.D. Fla. Feb. 4,

18   2011), and *Herman v. Enhance Memory Prods., Inc.*, No. CivA99-7029CAS, 2000 WL

19   33236601 (C.D. Cal. Oct. 2, 2000).  Neither case addresses even the possibility of

20   imposing § 1056(d)(4)'s offset remedy in an order granting injunctive relief.  Instead,

21   both cases impose the offset remedy after granting *summary judgment* in favor of the

22   Secretary.

23           The court will not overlook the Secretary's obligation to prove irreparable harm.

24   The Secretary has, however, provided evidence that there is a pending request from Ms.

25   Lucas-Jackson to transfer her Plan balance into an individual retirement account.  That

26   means that assets that would otherwise be subject to offset in accordance with

27

28   ORDER – 5

§ 1056(d)(4) could be placed beyond the reach of a final judgment. The court cannot be certain that this will actually cause irreparable harm. That is because the Secretary has done nothing to explain whether Ms. Lucas-Jackson has other assets that could be used to satisfy a final judgment, whether there is any reason to prefer the offset remedy of § 1056(d)(4) to other remedies that might be available to make the Plan whole, or whether a "rollover" of Ms. Lucas-Jackson's Plan balance into an individual retirement account will place that balance beyond the reach of a judgment. Nonetheless, because the Plan's assets impact the financial livelihoods of its other participants, the court concludes that there is a sufficient likelihood of irreparable harm to justify the issuance of a TRO of brief duration until the court can hear from Ms. Lucas-Jackson and other Defendants.

The remaining factors favor the issuance of a TRO. There is no suggestion that the TRO would have any significant impact on Ms. Lucas-Jackson. She has not requested immediate access to her Plan balance, she has merely requested a transfer of that balance to a different retirement account. The court has no reason to conclude that any hardship would result from delaying that transfer. By comparison, the potential hardship to the Plan of placing assets beyond the reach of this court's final judgment is substantial.[1] The court concludes that the balance of hardships sharply favors the Secretary. The court also concludes that an order that preserves the integrity of retirement plan funds pending the resolution of disputes is in the public interest.

The court need not consider imposing bond in this case, because the United States and its officers are exempt from the obligation to provide security. Fed. R. Civ. P. 65(c).

---

[1] The Secretary does not explain why it needs to restrain Ms. Lukas-Jackson's entire Plan balance (which exceeds $200,000) to offset unpaid contributions totaling less than $50,000. The Secretary must address this issue if it hopes to obtain a preliminary injunction or extension of the TRO.

ORDER – 6

## IV.  TEMPORARY RESTRAINING ORDER

1) Upon service of this order, Massachusetts Mutual Life Insurance Company ("MassMutual") may not withdraw or transfer or assist in withdrawing or transferring any portion of Brenda Lukas-Jackson's balance in the Lukas Machine, Inc., 401(k) Profit Sharing Plan (whether by way of rollover, withdrawal request, or any other means that would remove Plan assets). MassMutual also may not permit anyone to encumber Ms. Lukas-Jackson's Plan balance.

2) Unless the court extends or dissolves this temporary restraining order, it will expire at 11:59 p.m. on April 29, 2014.

## V.  CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion (Dkt. # 3) in part and imposes a temporary restraining order.  The clerk shall create a motion calendar noted for April 29 to address the Secretary's request for a preliminary injunction.

The court also orders as follows:

1) The Secretary shall promptly use reasonable means to ensure that all Defendants receive at least informal notice of the complaint, the motion for a TRO, and this order.  The Secretary shall promptly file notice of its informal service.

2) The Secretary shall promptly effect formal service of the summons and complaint, its motion for TRO, and this order.  The Secretary shall promptly file notice of formal service.

3) Any Defendant, including Ms. Lukas-Jackson, who wishes to either request that the court dissolve the TRO (*see* Fed. R. Civ. P. 65(b)(4)) or to request that the court not impose a preliminary injunction with the same terms as the TRO shall, by April 24, file an opposition or a request for additional time to prepare an opposition.

ORDER – 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   4)  No later than noon on April 28, the Secretary shall either respond to any
       opposition or it shall explain why the court should issue a preliminary
       injunction or extend the TRO.  The Secretary shall, at a minimum, address the
       evidentiary and legal issues the court has addressed in this order.

Dated this 15th day of April, 2014.

       _____

       The Honorable Richard A. Jones
       United States District Court Judge

ORDER – 8